Filed 3/20/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FIDELITY NATIONAL HOME WARRANTY COMPANY CASES | D074161 |
| | (JCCP No. 4806, Sup. Ct. Nos. 37-2008-00087962-CU-BT-CTL, 37-2008-00088433-CU-BTL-CTL, 39-2012-00286479-CU-BT-STK) |

APPEALS from judgments of the Superior Court of San Diego County,

Eddie C. Sturgeon, Judge.  Affirmed in part; reversed in part.

Bottini & Bottini, Francis A. Bottini, Jr., Yury A. Kolesnikov; Cotchett, Pitre &

McCarthy, Niall P. McCarthy and Anne Marie Murphy for Plaintiff and Appellants.

Hahn Loeser & Parks, Michael J. Gleason and Steven A. Goldfarb for Defendant

and Respondent.

I.

INTRODUCTION

Plaintiffs Dan Kaplan, James Baker, Janice Fistolera, Fernando Palacios, and

Hamid Aliabadi appeal from two judgments dismissing two coordinated actions against

defendant Fidelity National Home Warranty Company (Fidelity): *Fistolera v. Fidelity*

*National Home Warranty Company* (Super. Ct. San Joaquin County, No. 39-2012-

00286479-CU-BT-STK) (Fistolera Action) and *Kaplan v. Fidelity National Home Warranty Company* (Super. Ct. San Diego County, No. 37-2008-00087962-CU-BT-CTL) (Kaplan Action).[1] The trial court dismissed the actions after determining that the plaintiffs failed to timely prosecute each case. With respect to the Fistolera Action, a putative class action, the trial court concluded that the Fistolera Plaintiffs failed to bring the action to trial within the five-year mandatory period specified in Code of Civil Procedure section 583.310.[2] As to the Kaplan Action, a certified class action, the trial court concluded that the Kaplan Plaintiffs failed to bring the action to trial within three years of the issuance of the remittitur in a prior appeal in that action (*Kaplan v. Fidelity National Home Warranty* (December 17, 2013, D062531, D062747) [nonpub. opn.] (*Kaplan I*)), as required by section 583.320.[3] On appeal, plaintiffs claim that the trial court erred in dismissing each action.

---

[1]    The Kaplan Action included the consolidated action, *Baker v. Fidelity National Home Warranty Company* (Super. Ct. San Diego County, No. 37-2008-00088433-CU-BT-CTL).
        Although plaintiffs filed a single notice of appeal from both judgments, we construe that notice of appeal as effectuating an appeal in the Fistolera Action and a separate appeal in the Kaplan Action. The appeals then were de facto consolidated in this court through the assignment of a single appellate case number. We use the terms "Fistolera Plaintiffs" and " Kaplan Plaintiffs" to refer to the plaintiffs in the Fistolera Action and the Kaplan Action, respectively.

[2]    Unless otherwise specified, all subsequent statutory references are to the Code of Civil Procedure.

[3]    As discussed in part III.B.1.c, *post*, the trial court determined that the three-year period had been tolled for a total of 45 days. Thus, to be precise, the trial court concluded that that the Kaplan Plaintiffs had failed to bring the action to trial within three years and 45 days of the issuance of the remittitur in the prior appeal.

Prior to addressing the merits of the plaintiffs' claims, we consider in part III.A, *post*, whether the plaintiffs' appeals are timely. For reasons that we explain in that part, we conclude, as a matter of first impression, that the trial court's order dismissing the actions did not constitute a judgment pursuant to section 581d, and that the plaintiffs' appeals from the ensuing judgments were timely.

On the merits of the plaintiffs' claims, we conclude that, in calculating the five-year and three-year mandatory dismissal periods, the trial court erred in failing to exclude 135 days immediately following the assignment of a coordination motion judge to rule on a petition to coordinate the Fistolera Action and the Kaplan Action. We reach this conclusion because it was "impracticable" to bring either action to trial (§ 583.340, subd. (c)) during this period since California Rules of Court, rule 3.515(i) provides that "no trial may be commenced" during such a period. We further conclude that this error requires reversal of the dismissal of the Fistolera Action because, after excluding these 135 days, the five-year period had *not* expired as of the time the trial court dismissed that action, and the matter was set for trial within the five-year period.

However, we conclude that this error does not require reversal of the trial court's dismissal of the Kaplan Action. We reach this conclusion because, even after excluding 135 days related to the coordination proceedings, the three-year period that the Kaplan Plaintiffs had to bring that action to trial *had* expired as of the time the trial court dismissed that case. Further, none of the Kaplan Plaintiffs' arguments for additional tolling of the three-year period has merit.

3

Accordingly, we reverse the judgment in the Fistolera Action and affirm the judgment in the Kaplan Action.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Kaplan Action prior to* Kaplan I[4]

In 2008, Kaplan and Baker, as putative class representatives (Kaplan Plaintiffs),[5] each filed a lawsuit against Fidelity.  In their complaints, the Kaplan Plaintiffs alleged that they had entered into home warranty agreements with Fidelity.  The Kaplan Plaintiffs further alleged that they had made claims under the agreements and that Fidelity failed to properly address their claims.  According to the Kaplan Plaintiffs, Fidelity violated its contractual obligations and engaged in unfair and unlawful business practices.  The Kaplan Plaintiffs later consolidated their complaints.

In November 2010, the trial court certified a class of "[a]ll persons and entities residing in the United States who, during the period from July 18, 2002 through the present . . . made a claim under a home-warranty plan obtained from defendant Fidelity. . . ."

---

[4]     Our summary of the proceedings prior to *Kaplan I* is taken from the factual and procedural background portion of that opinion.  (*Kaplan I*, *supra*, D062531, D062747.)

[5]     For ease of reference, we refer to Baker and Kaplan as the Kaplan Plaintiffs, even though, technically, prior to consolidation, Baker and Kaplan were putative class representatives of the classes in each individual action.

4

In December 2011, Fidelity moved to strike and dismiss a fourth amended complaint that had been filed in the Kaplan Action. The trial court granted Fidelity's motion and dismissed the entire action without prejudice. The Kaplan Plaintiffs appealed.

B. *The Fistolera Action prior to* Kaplan I

While the Kaplan Action was being appealed, on August 30, 2012, Fistolera, Palacios, and Jared Whitfield filed the Fistolera Action in San Joaquin County Superior Court. As in the Kaplan Action, the complaint alleged that Fidelity had engaged in various types of wrongful conduct in connection with Fidelity's home warranty business. The complaint in the Fistolera Action indicated that it was brought on behalf of all persons or entities who had purchased or received a Fidelity home warranty plan from July 18, 2002 through the present.[6] In October 2013, the Fistolera Plaintiffs filed the operative second amended complaint, adding Aliabadi as a named plaintiff and withdrawing Whitfield. The operative second amended complaint contains an individual breach of contract cause of action and six additional causes of action that are brought on behalf of both the individual named plaintiffs and the class.

---

[6] While the certified class in the Kaplan Action consisted of those persons and entities who had *made a claim* under a Fidelity home warranty during the class period (see pt. II.A, *ante*), the putative class in the Fistolera Action involved all individuals and entities who had *purchased* a Fidelity home warranty during the class period.

5

C. *Kaplan I*

In December 2013, this court issued our opinion in *Kaplan I*. As relevant here, we reversed the dismissal of the action without leave to amend and remanded the matter with direction to permit the Kaplan Plaintiffs an opportunity to amend their complaint. (*Kaplan I*, *supra*, D062531, D062747.) The remittitur in *Kaplan I* issued on April 14, 2014.

D. *The coordination proceedings*

In September 2014, the Kaplan Plaintiffs filed a petition for coordination with the Judicial Council, seeking to coordinate the Kaplan Action and the Fistolera Action.

The Fistolera Plaintiffs notified the San Joaquin County Superior Court of the petition for coordination that same month.

On October 19, 2014, the Judicial Council assigned San Diego County Superior Court Judge Eddie Sturgeon to be the coordination motion judge.[7] On March 3, 2015, Judge Sturgeon granted the petition for coordination. On April 10, 2015, the Judicial Council appointed Judge Sturgeon as the coordination trial judge[8] in the proceedings.

---

[7] Under California Rules of Court, rule 3.501(7), " '[c]oordination motion judge' means an assigned judge designated under . . . section 404 to determine whether coordination is appropriate."

[8] Under California Rules of Court, rule 3.501(9), " '[c]oordination trial judge' means an assigned judge designated under . . . section 404.3 to hear and determine coordinated actions."

6

E.   *Fidelity's motions to dismiss*

In August 2017, Fidelity moved to dismiss the Kaplan Action for failure to bring the case to trial in a timely manner, and in October 2017, Fidelity moved to dismiss the Fistolera Action on the same ground.  In November 2017, plaintiffs filed an omnibus opposition to Fidelity's motions to dismiss.

F.   *The trial court sets a trial date in both actions*

Three days after Fidelity filed its motion to dismiss the Kaplan Action, the plaintiffs filed an ex parte application seeking to consolidate the actions and set them for trial.  The trial court denied the consolidation request, but set the matters for trial on February 16, 2018.

G.   *The Fistolera Plaintiffs' motion for leave to amend*

In September 2017, the Fistolera Plaintiffs moved for leave to amend the second amended complaint to permit Fistolera, Aliabadi, and Palacios to be dismissed from the action and to add a new named plaintiff, Richard Eidson.  The motion indicated that it would be set for hearing in January 2018.

H.   *Plaintiffs' Motions for Class Certification*

Plaintiffs filed motions for class certification in both actions in November 2017.  In their motion, the Kaplan Plaintiffs explained that they were seeking to certify additional claims in that action on behalf of the already certified class.  The Fistolera Plaintiffs sought to certify a class and to have Eidson appointed as a class representative.  Both motions indicated that they would be set for a hearing in April 2018.  Plaintiffs filed an omnibus memorandum in support of their motions.

7

I.  *The trial court's dismissal of the actions*

On December 15, 2017, the trial court granted Fidelity's motions to dismiss both cases for failure to timely prosecute.  The trial court entered a judgment dismissing the Fistolera Action on March 7, 2018 and entered a judgment dismissing the Kaplan Action on April 2, 2018.

J.  *The appeals*

On May 1, 2018 plaintiffs filed a single notice of appeal from the judgments in the Fistolera Action and the Kaplan Action.

III.

DISCUSSION

A.  *The appeals are timely*

We first consider, sua sponte, whether plaintiffs' appeals are timely.  (E.g., *Drum v. Superior Court* (2006) 139 Cal.App.4th 845, 849 ["because the timeliness of an appeal poses a jurisdictional issue, we must raise the point sua sponte"].)[9]

For reasons that we explain below, we conclude that the December 15 dismissal order did *not* constitute a judgment in either action.  We further conclude that two additional orders that the trial court issued in February 2018 pertaining to the extent to

---

9      While the appeals were pending, we requested that the parties submit simultaneous supplemental briefs addressing whether "the appeals in this matter [should] be dismissed as untimely . . . ."  The parties complied with our request.  Together with their supplemental briefs, the parties lodged several documents that they had filed in the trial court, that are relevant to the issue.  We have augmented the record to include these documents and have considered them in analyzing the timeliness of the appeals.

8

which notice of the dismissals had to be provided to the putative class in the Fistolera Action and to the certified class in the Kaplan Action also were not judgments. Finally, we conclude that, since the trial court entered a judgment on March 7, 2018 in the Fistolera Action and entered a judgment on April 2, 2018 in the Kaplan Action, plaintiffs' May 1, 2018 notice of appeal was timely as to both judgments.

1. *Factual and procedural background*

a. *The December 15 order granting Fidelity's motion to dismiss*

On December 15, 2017, the trial court issued a minute order granting Fidelity's motion to dismiss both actions. In its order, the court stated, "The court grants the dismissals for both actions."

Fidelity served plaintiffs with notice of entry of the December 15 order that same day.

b. *Proceedings pertaining to class notice*

On January 17, 2018, Fidelity filed an ex parte application captioned, "Regarding Final Judgment and Class Notice." (Boldface & some capitalization omitted.) In its application, Fidelity stated, with respect to the Kaplan Action, that, "because a class has been certified and notice of the pendency of the action has been provided to class members, notice of the dismissal—in a form deemed adequate by this Court—must be given to the certified class in the manner specified by the Court. ([§] 581[, subd.] (k) and Cal. Rule[s] of Court[,] [rule] 3.770[.])" With respect to the Fistolera Action, Fidelity stated that "because the Court has not ruled on class certification, the action may be

9

dismissed without notice to the class members, if the Court finds that the dismissal will not prejudice them.  (Cal. Rule[s] of Court[,] [rule] 3.770(c)[.])"

In late January 2018, plaintiffs filed a brief in which they agreed with Fidelity that it was necessary to provide notice of the dismissal to the class in the Kaplan Action and that it was not necessary to provide notice of the dismissal to the putative class in the Fistolera Action.

Fidelity filed a reply brief regarding notice and the trial court's entry of a judgment.  In its reply brief, Fidelity stated in relevant part:

> "Fidelity objects to how Plaintiffs' [Proposed] Notice[10] addresses the December 15, 2017 order of this Court regarding dismissal. Plaintiffs propose notifying the class that 'On December 15, 2017, the Court . . . dismissed the lawsuit'—past tense.  [Citation.] However, as Plaintiffs acknowledge, the [Kaplan Action] cannot be dismissed prior to notice being given to the class.  (Citation; . . . § 581[, subd.] (k) ['No action may be dismissed which has been determined to be a class action under the provisions of this code unless and until notice that the court deems adequate has been given and the court orders the dismissal'].)  Thus, as detailed in Fidelity's motion, notice will first be provided to the class and then the action will be dismissed upon the entry of the judgment of dismissal." (Boldface & underscoring omitted.)

The trial court held a hearing on the issues and, on February 7, issued a minute order in which it specified the manner by which notice of the dismissal could be given to the class in the Kaplan Action and determined that no notice of the dismissal had to be provided to the putative class in the Fistolera Action.  The court also stated that it had

---

10    The proposed notice is not in the record.

"reviewed the proposed notices and judgments dismissing each action . . . and approve[d] them for form and content."[11]  On February 9, Fidelity served plaintiffs with "Notice of Entry" (boldface & some capitalization omitted) of the February 7 order.

On February 28, the trial court issued an order on Fidelity's motion "[r]egarding [f]inal [j]udgment and [c]lass [n]otice."  The order states in relevant part:

> "Pursuant to . . . [section] 581[, subd.] (k) and California Rule[s] of Court[,] [rule] 3.770, this Court FINDS that because a class had been certified in [Kaplan Action] and notice of the pendency of the [Kaplan Action] had been provided to class members, notice of the dismissal of [Kaplan Action] must be given to the class in the manner specified by the court. . . .
>
> "Pursuant to California Rule[s] of Court[,] [rule] 3.770(c), this Court FINDS that in the [Fistolera Action], the Court has not ruled on class certification and that the [Fistolera Action] may be dismissed without notice to the putative class members because the dismissal will not prejudice the absent putative class members."  (Boldface omitted.)

On March 9, Fidelity served plaintiffs with notice of entry of the February 28 order.

### c.  *The judgments*

On March 7, 2018, the court entered a judgment in the Fistolera Action.

On April 2, 2018, the court entered a judgment in the Kaplan Action.

---

11    The court stated that it had one modification to the proposed class notice to be provided in the Kaplan Action.  The modification is not relevant to the issues on appeal.

11

d. *The appeals*

On May 1, 2018, plaintiffs filed a single notice of appeal from the judgments entered on March 7 and April 2.

2. *Governing law*

a. *Relevant law governing the timeliness of appeals*

California Rules of Court, rule 8.104(a) provides in relevant part:

"[A] notice of appeal must be filed on or before the earliest of:

"[¶] . . . [¶]

"(B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service . . . ."

b. *A judgment under California law*

In *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1 (*Dana Point*), the Supreme Court outlined the following principles governing what constitutes a "judgment" under California law:

"A judgment is the final determination of the rights of the parties (citation) ' " 'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.' " ' [Citations.] ' "It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." ' " (*Id.* at p. 5, italics omitted.)

c. *Section 581d*

Section 581d provides:

"A written dismissal of an action shall be entered in the clerk's register and is effective for all purposes when so entered.

"All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes, and the clerk shall note those judgments in the register of actions in the case."

This court lacks jurisdiction in cases in which an appellant has failed to timely appeal from an order of dismissal entered pursuant to section 581d, where such order constitutes a judgment. (See, e.g., *The Inland Oversight Committee v. City of Ontario* (2015) 240 Cal.App.4th 1140, 1144–1145 (*Inland Oversight*) [stating that "a written, signed order dismissing a complaint is treated as an appealable judgment," and concluding, "[t]his court thus lacks jurisdiction to consider the merits of [the] appeal and must dismiss the appeal"].)

d. *The law governing the dismissal of certified and putative class actions*

Section 581, subdivision (k) provides:

"No action may be dismissed which has been determined to be a class action under the provisions of this code unless and until notice that the court deems adequate has been given and the court orders the dismissal."

California Rules of Court, rule 3.770, subdivision (c) pertains to notice of the dismissal of certified and putative class actions and provides:

"If the court has certified the class, and notice of the pendency of the action has been provided to class members, notice of the dismissal must be given to the class in the manner specified by the court. If

13

the court has not ruled on class certification, or if notice of the pendency of the action has not been provided to class members in a case in which such notice was required, notice of the proposed dismissal may be given in the manner and to those class members specified by the court, or the action may be dismissed without notice to the class members if the court finds that the dismissal will not prejudice them."

California Rules of Court, rule 3.771 pertains to judgments in class actions and provides:

"(a) Class members to be included in judgment

"The judgment in an action maintained as a class action must include and describe those whom the court finds to be members of the class.

"(b) Notice of judgment to class

"Notice of the judgment must be given to the class in the manner specified by the court."

3. *Application*

It is undisputed that plaintiffs' May 1, 2018 appeals are timely to the extent that they are properly taken from the March 7 judgment in the Fistolera Action and the April 2 judgment in the Kaplan Action. (See Cal. Rules of Court, rule 8.104(a)(1) [providing a minimum of 60 days after entry of an appealable order or judgment to file a notice of appeal].)

However, as our supplemental briefing order suggested, we must address whether the December 15 order constituted a judgment in each action under section 581d.[12] That

---

[12] After outlining the relevant legal and factual background, our supplemental briefing order stated in relevant part:

14

is because, if the December 15 order is a judgment pursuant to section 581d, then the May 1 appeals are *untimely*. (See Cal. Rules of Court, rule 8.104(a)(1)(B) [providing that an appeal must be taken "60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service"].)[13] In addition, as will be discussed below, we must address whether, as suggested by the parties in their

"The parties are directed to file supplemental briefs, no longer than ten single-spaced pages, addressing the following question:

"Should the appeals in this matter be dismissed as untimely under California Rules of Court, rule 8.104?

"In discussing this question, the parties are directed to address whether the December 15 order constitutes a judgment under Code of Civil Procedure section 581d.

"[¶] . . . [¶]

"In addressing whether the appeals in this matter should be dismissed as untimely, the parties are directed to discuss what effect, if any, Code of Civil Procedure section 581, subdivision (k) and California Rules of Court, rule 3.770, pertaining to the dismissal of class actions, and California Rules of Court, rule 3.771, pertaining to judgments in class actions, have on this question.

"Finally, the parties may address in their briefs any other provision of law bearing on the determination of the timeliness of the appeals in this matter."

[13] As noted previously, Fidelity served plaintiffs with notice of entry of the December 15 order on that same day. (See pt. III.A.1.a, *ante*.)

15

supplemental briefs, either the trial court's February 7 or February 28 order constitutes a judgment.[14]

It appears to be undisputed that the December 15 order would constitute a judgment under section 581d if it had been filed in a case that was neither a class action nor a putative class action.[15]  The December 15 minute order states, "The court grants the dismissals for both actions," and the judge's signature stamp appears on the order. (See, e.g., *Inland Oversight*, *supra*, 240 Cal.App.4th at pp. 1144–1145; *Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 779 ["Under former section 581d, a dismissal order acts as a final judgment in the action"]; *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1234 [applying section 581d to minute order stamped with a facsimile of the judge's signature].)

The question becomes whether this same result holds given that the underlying actions in this matter were a putative class action (Fistolera Action) and a certified class action (Kaplan Action).  The parties have not cited, and our own research has not revealed, any case law applying section 581d in a case involving either a class action or a putative class action.  Accordingly, we consider below, as a matter of first impression, whether the trial court entered any orders, prior to the March 7 and April 2 judgments,

14     As explained in III.A.3.c, *post*, Fidelity contends that the court's February 7 order was a judgment and that May 1, 2018 was untimely.  Plaintiffs contend that the February 28 order was a judgment and the May 1, 2018 appeal was timely.

15     Plaintiffs present no argument to the contrary in their supplemental brief.

that constituted a judgment pursuant to section 581d in either the Fistolera Action or the Kaplan Action such that plaintiffs' May 1, 2018 appeals are untimely.

      a. *The December 15 order was not a final order of dismissal and is thus not a judgment under section 581d in either the Fistolera Action or the Kaplan Action*

Section 581, subdivision (k) provides that no class action may be dismissed "unless and until notice that the court deems adequate has been given and the court orders the dismissal."  (Accord, Cal. Rules of Court, rule 3.770(c) ["If the court has certified the class, and notice of the pendency of the action has been provided to class members, notice of the dismissal must be given to the class in the manner specified by the court"].)

With respect to putative class actions, California Rule of Court, rule 3.770(c) provides that such actions "may be dismissed without notice to the class members *if the court finds that the dismissal will not prejudice them*."  (Italics added.)  This rule of court is consistent with the principle that "California courts recognize and preserve the rights of absent class members, even before the issue of certification has been determined." (*Shapell Industries, Inc. v. Superior Court* (2005) 132 Cal.App.4th 1101, 1109.)

It is undisputed that, prior to the December 15 order, no notice of the dismissal was given to the class in the Kaplan Action.  Thus, pursuant to section 581, subdivision (k), the December 15 order did not constitute a final dismissal of the Kaplan Action.  It is also undisputed that, prior to the December 15 order, the trial court had made no determination with respect to whether the putative class members would be prejudiced by the dismissal in the Fistolera Action.  Thus, pursuant to California Rules of Court, rule

17

3.770, subdivision (c), the December 15 order did not constitute a final dismissal of the Fistolera Action.

Further, an order, such as the December 15 order, that does not constitute a final order of dismissal also does not constitute a *judgment*. (See *Dana Point*, *supra*, 51 Cal.4th at p. 5 [stating that a judgment consists of a "final determination of the rights of the parties," where "no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree" (italics omitted)]; accord, *Covina-Azusa Fire Fighters Union v. City of Azusa* (1978) 81 Cal.App.3d 48, 56 [stating that because "further action is contemplated" in case, order was not appealable pursuant to section 581d]; compare with *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583 ["The August 23, 2000 order was an appealable order: *it contemplated no further action*, such as the preparation of another order or judgment" (italics added)].)[16]

### b. *Fidelity's arguments in support of its claim that the December 15 order constituted a judgment are unpersuasive*

Fidelity offers several arguments in support of its contention that the December 15 order constituted a judgment in both actions. We consider each argument below.

Fidelity argues that section 581, subdivision (k) and California Rules of Court, rule 3.770(c) do not "*extend* the time to appeal under rule 8.108 of the California Rules of

---

[16]    Fidelity cited *Laraway* in its supplemental briefing.

Court."[17] (Italics added.) While that may be the case, for the reasons described above, when considered in light of section 581, subdivision (k) and California Rules of Court, rule 3.770(c), the December 15 order lacked sufficient finality to constitute a judgment. Because that order did not constitute a judgment, the time to file an appeal under California Rules of Court, rule 8.104(a) did not *commence* with notice of entry of the December 15 order.

We are not persuaded by Fidelity's contention that section 581, subdivision (k) and California Rules of Court, rule 3.770(c) provide, "at most, *collateral* rights" to absent class members. (Italics added.) By providing that "[n]o [class] action may be dismissed . . . *unless and until* notice that the court deems adequate has been given and the court orders the dismissal," (italics added) section 581, subdivision (k) makes clear that the giving of notice is a *prerequisite* to a trial court dismissing a class action. Similarly, California Rules of Court, rule 3.770(c) *conditions* the dismissal of a putative class action on the trial court's determination that "the dismissal will not prejudice" putative class members.

Also unpersuasive is Fidelity's suggestion that section 581, subdivision (k) did not deprive the December 15 order of finality in the Kaplan Action because the purpose of the statute is to ensure that absent class members have notice that a case is being "*unilaterally*[, i.e., voluntarily] dismiss[ed]," (italics added) and the December 15

---

17    California Rules of Court, rule 8.108 provides that the filing of certain motions in the trial court may extend the period within which a party must file a notice of appeal.

dismissal was premised on a "*contested* motion."  (Italics added.)  Section 581 is clear that it operates with respect to *both* voluntary and involuntary dismissals.  For example, section 581, subdivision (b)(4) provides in relevant part:

> "(b) An action may be dismissed in any of the following instances:
>
> "[¶] . . . [¶]
>
> "(4) *By the court*, without prejudice, when dismissal is made pursuant to the applicable provisions of Chapter 1.5 (commencing with Section 583.110)."[18]  (Italics added.)

Thus, section 581, subdivision (k) cannot reasonably be interpreted as applying only in cases in which a plaintiff "unilaterally" dismisses a case.

While the text of California Rules of Court, rule 3.770 is less clear than section 581 with respect to whether it applies to involuntary dismissals,[19] we conclude that the

---

[18]  "Chapter 1.5 (commencing with Section 583.110)," (§ 581, subd. (b)(4)) consists of statutes pertaining to the dismissal of an action for a delay in prosecution and includes sections 583.320 and 583.360, pursuant to which the court dismissed the Kaplan Action.

[19]  California Rules of Court, rule 3.770 provides in its entirety:

> "(a) Court approval of dismissal
>
> "A dismissal of an entire class action, or of any party or cause of action in a class action, requires court approval.  The court may not grant a request to dismiss a class action if the court has entered judgment following final approval of a settlement.  Requests for dismissal must be accompanied by a declaration setting forth the facts on which the party relies.  The declaration must clearly state whether consideration, direct or indirect, is being given for the dismissal and must describe the consideration in detail.
>
> "(b) Hearing on request for dismissal
>
> "The court may grant the request without a hearing.  If the request is disapproved, notice of tentative disapproval must be sent to the

20

rule of court is most reasonably interpreted as applying to both voluntary and involuntary dismissals, for the following reasons. First, subdivision (c) of the rule, pertaining to the provision of notice, does not contain any language limiting its application to voluntary dismissals. Further, California Rules of Court, rule 3.770(c) applies to both class actions and putative class actions. Since section 581 expressly applies to both involuntary and voluntary dismissals, adopting a similar interpretation of the corresponding notice provision in the Rules of Court allows us to "read the statute and rule in harmony." (*Carlton v. Dr. Pepper Snapple Group, Inc.* (2014) 228 Cal.App.4th 1200, 1210.) For these reasons, we reject Fidelity's contention that the notice provisions of section 581,

---

attorneys of record. Any party may seek, within 15 calendar days of the service of the notice of tentative disapproval, a hearing on the request. If no hearing is sought within that period, the request for dismissal will be deemed denied.

"(c) Notice to class of dismissal

"If the court has certified the class, and notice of the pendency of the action has been provided to class members, notice of the dismissal must be given to the class in the manner specified by the court. If the court has not ruled on class certification, or if notice of the pendency of the action has not been provided to class members in a case in which such notice was required, notice of the proposed dismissal may be given in the manner and to those class members specified by the court, or the action may be dismissed without notice to the class members if the court finds that the dismissal will not prejudice them."

21

subdivision (k) and California Rules of Court, rule 3.770(c) are "not implicated when a defendant seeks to dismiss a claim through a noticed and contested motion."[20]

Finally, with respect to the Kaplan Action, we are not persuaded by Fidelity's argument that section 581, subdivision (k) does not "apply to the individual claims and putative class claims . . . ."[21] Section 581, subdivision (a)(1) provides, " '[a]ction' means any civil action or special proceeding," and section 581, subdivision (k) in turn provides that "[n]o *action* may be dismissed," (italics added) unless the required notice is provided. The statute does not speak to individual claims but rather, to the disposition of an action *in its entirety*. Moreover, to construe section 581, subdivision (k) as applying with respect to individual *claims* would result in *multiple* judgments in a single action, in contravention of the " 'one final judgment' " rule, "a fundamental principle of appellate practice," that precludes " ' "piecemeal disposition and multiple appeals in a single action." ' " (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 21.)

---

[20]   Contrary to its argument on appeal, in the trial court, Fidelity took the position that California Rules of Court, rule 3.770(c) applied with respect to the involuntary dismissal at issue in this case. (See pt. III.A.1.b, *ante*.)

[21]   As with the operative complaint in the Fistolera Action (see pt. II.B, *ante*), the operative complaint in the Kaplan Action contained both an individual breach of contract cause of action and numerous causes of action brought on behalf of both the individual named plaintiffs and the class.

c. *Fidelity's alternative argument that the trial court's February 7 order constitutes a judgment pursuant to section 581d is not persuasive*

Fidelity argues in the alternative that the trial court's February 7 minute order "was a written order signed by the court effective as a judgment for all purposes under Section 581d." As discussed in part III.A.1.b, *ante*, the February 7 order specified the form of notice of the dismissal to be given to class members in the Kaplan Action and determined that no notice of the dismissal had to be given to putative class members in the Fistolera Action. However, the February 7 order neither expressly nor implicitly constituted a dismissal of either the Kaplan Action or the Fistolera Action such that it could be considered a judgment under section 581d. (See § 581d ["A written *dismissal* of an action shall be entered in the clerk's register and is effective for all purposes when so entered" (italics added)].)[22] We therefore reject Fidelity's alternative argument that the trial court's February 7 order constitutes an appealable judgment pursuant to section 581d.[23]

_____

[22] In addition, with respect to the Kaplan Action, it is clear that the February 7 order did not result in a final order of dismissal, since the February 7 order specified the manner in which notice of the dismissal *could* be given to the class, rather than constituting an order deeming adequate notice *had been* given. (See § 581, subd. (k) [precluding dismissal of a class action "unless and until notice that the court deems adequate *has been given*" (italics added)].)

[23] In their supplemental brief, plaintiffs contend that "for purposes of . . . [section 581d], there was no 'dismissal[ ]' of the actions until the trial court issued its Order on Defendant's Motion Regarding Final Judgment and Class Notice on February 28, 2018." Plaintiffs argue that, since Fidelity provided notice of entry of the February 28 order on March 9, their May 1 notice of appeal was timely. For the same reason outlined in the text with respect to the February 7 minute order, we conclude that the trial court's February 28 formal order did not constitute a judgment pursuant to section 581d.

d. *Conclusion*

In sum, we conclude that neither the December 15 order nor the February 7 or February 28 orders constitutes an appealable judgment pursuant to section 581d in either the Fistolera Action or the Kaplan Action. Accordingly, we conclude that plaintiffs' May 1, 2018 appeal from the March 7, 2018 judgment in the Fistolera Action and May 1, 2018 appeal from the April 2, 2018 judgment in the Kaplan Action are timely.

B. *The trial court erred in dismissing the Fistolera action but properly dismissed the Kaplan Action*

Plaintiffs claim that the trial court erred in dismissing both actions for failure to timely prosecute. The trial court concluded that the Fistolera Plaintiffs failed to bring the matter to trial within five years of the filing of the complaint (§ 583.310) and that the Kaplan Plaintiffs failed to bring the matter to trial within three years and forty-five days[24] of the issuance of the remittitur in *Kaplan I* (§ 583.320, subd. (a)(3)).

We first outline the procedural background and law relevant to both actions and then consider whether, with respect to each action, the trial court properly dismissed the action.

1. *Procedural background*

a. *The commencement of each action for purposes of the mandatory dismissal statutes*

The Fistolera Plaintiffs filed the Fistolera Action on August 30, 2012.

---

[24] (See fn. 3, *ante*.)

On April 14, 2014, this court's remittitur issued in *Kaplan I.*

      b.   *Fidelity's motions to dismiss and plaintiffs' omnibus opposition thereto and plaintiffs' ex parte application to consolidate and set the matters for trial*

On August 11, 2017, Fidelity filed a motion to dismiss the Kaplan Action for failure to bring the case to trial in a timely manner. In its motion, Fidelity contended that the three-year period for the Kaplan Plaintiffs to bring that action to trial after the issuance of the remittitur in the prior appeal (§ 583.320, subd. (a)(3)) had expired no later than May 30, 2017.[25]

On August 14, 2017, plaintiffs filed an ex parte application to consolidate the Kaplan Action and the Fistolera Action and to set both matters for trial.

On August 15, 2017, the trial court denied plaintiffs' request to consolidate the two cases, but set both cases for trial on February 16, 2018.

---

[25]    In explaining its calculation of the three-year period, Fidelity acknowledged that the Kaplan Plaintiffs might be entitled to tolling for the six-day period when a peremptory challenge was pending and a 39-day period *after* the granting of the petition for coordination prior to the assignment of a coordination trial judge. Fidelity calculated the time to bring the action to trial as follows:

> "Giving them every benefit of the doubt, [Kaplan] Plaintiffs were required to bring this action to trial on or before May 30, 2017. Remittitur was filed on April 15, 2014 (making April 15, 2017 the statutory deadline to bring the action to trial, absent any tolling). Even if [Kaplan] Plaintiffs establish that they are entitled to tolling for the administrative actions related to the peremptory challenge and the assignment of a coordination judge, at best the trial deadline would be tolled forty-five days. Tolling the statutory deadline forty-five days (39 + 6) renders May 30, 2017 the deadline for trial. May 30, 2017 has long since passed."

On October 11, 2017, Fidelity filed a motion to dismiss the Fistolera Action on the ground that the Fistolera Plaintiffs had failed to bring the matter to trial within five years of the filing of the complaint (§ 583.310). Fidelity contended that the five-year period had expired no later than October 10, 2017.[26]

Plaintiffs filed an omnibus opposition to Fidelity's motions to dismiss in November 2017. In their opposition, in addition to agreeing with Fidelity that the five-year period in the Fistolera Action had been extended by 39 days during the period after the petition for coordination had been granted and the matter was awaiting the assignment of a coordination trial judge,[27] plaintiffs maintained that the five-year period

---

[26]    In explaining its calculation of the five-year period, Fidelity argued, "[T]o the extent the five-year period could have been tolled by a stay, it could only have occurred for thirty-nine days during a specific portion of the coordination proceedings." Fidelity acknowledged that a "complete stay of all proceedings tolls the running of the mandatory dismissal period" and that proceedings in a coordinated action are "stayed . . . from the moment coordination is granted until the coordination trial judge is assigned." (Boldface omitted.) Fidelity further noted that there were 39 days between the time the coordination motion judge granted the Kaplan Plaintiffs' petition to coordinate (March 3, 2015) and the Judicial Council's appointment of the coordination trial judge (April 10, 2015).
       In explaining how the additional 39 days affected its calculation of the five-year date, Fidelity stated, "Thirty-nine days after August 30, 2017 [five years after the filing of the August 30, 2012 complaint] is Saturday October 7, 2017 and Monday October 9, 2017 is the Columbus Day holiday."

[27]    On appeal, the Fistolera Plaintiffs acknowledge that the actual period was only 38 days. Fidelity agrees that this period at issue was 38 days. Fidelity also concedes that the five-year period should be extended by this period.

had been tolled for an additional 132 days[28] while the coordination motion was pending.

Plaintiffs argued in part:

> "[T]he five-year period is . . . extended by *132 days* from the day the coordination motion judge was assigned on October 22, 2014[[29]] until the coordination petition was granted on March 3, 2015. '[U]nder the statute, the time between the assignment of the coordination motion judge and the determination of the coordination motion is excluded from the five-year period.' [(*Bank of America v. Superior Court* (1988) 200 Cal.App.3d 1000, 1011–1012 & fn. 5 (*Bank of America*).)] This exclusion is required because [California Rules of Court,] [r]ule 3.515(i) expressly provides that following the assignment of the coordination motion judge, '*no trial may be commenced* and no judgment may be entered' in any of the actions subject to coordination. [California Rules of Court, rule 3.515(i)]."[30] (Boldface omitted.)

As a result, the Fistolera Plaintiffs calculated that the five-year period in the Fistolera Action had been extended by at least a total of 171 days (i.e., 39 days plus 132 days), or until February 20, 2018. The Fistolera Plaintiffs noted that the trial was

---

[28]   As explained in footnote 29, *post*, the actual period is 135 days.

[29]   On appeal, the Fistolera Plaintiffs correctly note that the actual period at issue was 135 days rather than 132 days. That is because the order assigning the coordination motion judge was entered on October 19, 2014, not on October 22, 2014.

[30]   In this opinion, in referring to a pending motion/petition for coordination, we refer to that period of time between the assignment of the coordination motion judge and the resolution of the coordination motion/petition. (See pt. III.B.4.a, *post* [quoting Cal. Rules of Court, rule 3.515(i)].)

scheduled to commence on February 16, 2018, and thus, the case would be brought to trial within the five-year period.[31]

With respect to the Kaplan Action, the Kaplan Plaintiffs argued that the three-year period applicable to that action (§ 583.320, subd. (a)(3)) had been tolled for 171 days due to the coordination proceedings, for the same reasons that the Fistolera Plaintiffs had argued with respect to the Fistolera Action. The Kaplan Plaintiffs also claimed that it was clear that the three-year period had been tolled for six days while a peremptory challenge was pending in May 2014. As a result of tolling related to the peremptory challenge and the coordination proceedings, the Kaplan Plaintiffs claimed that the statutory deadline to bring that case to trial had been extended to at least October 10, 2017.[32]

The Kaplan Plaintiffs claimed that they were entitled to additional tolling due to other periods during which, they maintained, it had been impracticable to bring the action

---

[31]    Specifically, the Fistolera Plaintiffs argued, "Applying just the foregoing two exclusions, the five-year period to bring the [Fistolera Action] to trial must be extended by *171 days* from August 31, 2017 to February 18, 2018. Because February 18, 2018 is a Sunday and February 19, 2018 is President's Day holiday, the five-year deadline would fall on *February 20, 2018*. [Citation.] Here, the Court has already set the case for trial on February 16, 2018, which is within the statutory time to bring the [Fistolera Action] to trial." (Boldface omitted.)

[32]    The Kaplan Plaintiffs explained that these two periods, alone, "would extend the deadline to bring the action to trial from April 15, 2017 (which is three years following the filing of the remittitur on April 14, 2014) to October 9, 2017. Because October 9, 2017 was Columbus Day holiday, the three-year deadline was extended until October 10, 2017."

28

to trial.  For example, the Kaplan Plaintiffs argued that they were entitled to additional tolling, given the trial court's inability to set the trial on a date earlier than February 16, 2018, notwithstanding that the Kaplan Plaintiffs had requested on August 15, 2017 that the matter be set for trial.  Accordingly, the Kaplan Plaintiffs claimed that the trial court should "conclude that it would be impracticable or impossible for the Kaplan Plaintiffs to bring their action to trial before the currently-set trial date of February 16, 2018."  (Italics omitted.)

   c. *The trial court's ruling*

After a hearing, the trial court dismissed both actions.  With respect to the Fistolera Action, the trial court rejected the argument that, in calculating the five-year period, the court was required to exclude 135 days during which the Kaplan Plaintiffs' petition to coordinate the Kaplan Action and the Fistolera Action was pending:

> "The court dismisses [the Fistolera Plaintiffs'] complaint for failure to prosecute the case within five years.  The court disagrees with the Fistolera [Plaintiffs'] arguments that an additional 172 days[33] must be added due to the coordination proceedings because plaintiffs would not have been able to proceed to trial on this matter.  This argument was specifically rejected by the Fourth District Court of Appeal, Division One case *Gordon's Cabinet Shop v. State Comp. Ins. Fund* (1999) 74 Cal.App.4th 33, 40–41 [(*Gordon's*

---

33 In the hearing on the issue, the trial court stated that the order should have stated "132" days, rather than "172" days.  There appears to be no dispute that the actual period at issue is 135 days, which corresponds to the period between October 19, 2014, when the judicial council assigned the coordination motion judge and March 3, 2015, the date of on which the coordination motion judge granted the petition for coordination.

29

*Cabinet*)][34] which involved the predecessor to California Rules of Court, rule 3.515."

The trial court explained its dismissal of the Kaplan Action as follows:

"Defendant Fidelity National Home Warranty Company's motion to dismiss the *Kaplan* sixth amended complaint is granted. *Kaplan* was filed on July 18, 2008, over 8 years ago. The court declines to exercise its discretion to extend the time for trial. It has been over three years since the Fourth District Court of Appeal, Division One issued a remittitur on April 15, 2014. [(*Kaplan I*)] Thus, the [Kaplan Plaintiffs] had three years in which to proceed to trial under Code of Civil Procedure sections 583.310 and 583.320. The court finds that the case was only tolled for 45 days (6 days for a peremptory challenge, and 39 days for the coordination assignment[ ])[.] Plaintiffs did not request any other stays."[35]

In a portion of the trial court's order that appears to apply to *both* actions, the court stated:

"Plaintiffs have failed to meet their burden to extend the computation of time pursuant to . . . section 583.340. Plaintiffs were required to show they exercised reasonable diligence in preparing for trial. As set forth in *Jordan v. Superstar Sandcars* (2010) 182 Cal.App.4th 1416, 1422 [(*Jordan*)], where the court did not find due diligence in preparing for trial even during the moratorium in Sacramento County stated:

"A plaintiff has an obligation to monitor the case in the trial court, to keep track of relevant dates, and to determine whether any filing,

---

34    *Gordon's Cabinet* was decided by the Court of Appeal, Fourth Appellate District, Division *Two*, rather than Division *One* as stated by the trial court. (See *Gordon's Cabinet*, *supra*, 74 Cal.App.4th 33.)

35    It is undisputed that the plaintiffs did not request a stay of either the Fistolera Action or the Kaplan Action while the coordination proceedings were pending. We discuss the Rules of Court governing stays ancillary to a coordination proceeding and the case law addressing the significance of such rules in considering the dismissal for delay of prosecution statutes, in parts III.B.4.a–b, *post*.

scheduling, or calendaring errors have occurred. This obligation of diligence increases as the five-year deadline approaches. (*Wilshire Bundy Corp. v. Auerbach* (1991) 228 Cal.App.3d 1280, 1286; see also *Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 336 [(*Tamburina*)].)

"Plaintiffs failed to request a stay at *any* time pursuant to California Rules of Court, rule 3.515(a).[36] Plaintiffs' sixth amended complaint had been stabilized and the ruling denying the motion to consolidate was finalized since April 2, 2016. And yet, currently plaintiffs have a motion to amend to substitute in new plaintiffs set for January 2018, and only at this hearing did plaintiff indicate a date for the class certification had been reserved. However, no pleadings have been filed on the class certification motion, and there is no current representative plaintiff. Plaintiffs blame the lack of discovery result [*sic*] are due to defendants' actions. However, plaintiffs did not pursue motions to compel. Plaintiffs assert they had to wait for the court's ruling on the appeal, but they had the ability to request a stay if they actually believed the issues were intertwined."

2.   *The law governing mandatory dismissal for failure to prosecute*

     a.   *The statutory scheme for delay in prosecution*

California has a series of statues pertaining to the dismissal of a case due to a party's delay in prosecuting a civil case. (See § 583.110 et seq.)

     i.   *The five-year period for bringing an action to trial*

Among these statutes is section 583.310, which provides, "An action shall be brought to trial within five years after the action is commenced against the defendant." (*Ibid.*)

---

36     (See pt. III.B.4.a, *post*.)

ii. *The three-year period for bringing an action to trial after the ordering of a new trial*

Section 583.320 specifies a three-year period for bringing an action to trial after an order granting a new trial, and provides in relevant part:

"(a) If a new trial is granted in the action[,] the action shall again be brought to trial within the following times:

"[¶] . . . [¶]

"(3) If on appeal an order granting a new trial is affirmed or a judgment is reversed and the action remanded for a new trial, within three years after the remittitur is filed by the clerk of the trial court."

iii. *Computation of the mandatory dismissal period*

Section 583.340 provides that certain time periods are to be "excluded" from the time within which an action must be brought to trial, as follows:

"In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed:

"(a) The jurisdiction of the court to try the action was suspended.

"(b) Prosecution or trial of the action was stayed or enjoined.

"(c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile."

"The . . . Law Revision Commission comment to section 583.340 states: 'Under Section 583.340 the time within which an action must be brought to trial is tolled for the period of the excuse, regardless whether a reasonable time remained at the end of the period of the excuse to bring the action to trial. . . .' [Citation.] Thus, a condition of impossibility, impracticability, or futility need not take the plaintiff beyond the five-year

32

deadline to be excluded; it will be excluded even if the plaintiff has a reasonable time remaining after the period to bring the case to trial." (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1100–1101 (*Gaines*).)

Because section 583.340 "was proposed by the California Law Revision Commission and enacted . . . without change," courts have repeatedly stated that " 'the report of the commission is entitled to substantial weight in construing the statute. . . .' " (*Chin v. Meier* (1991) 235 Cal.App.3d 1473, 1476–1477.)

### iv.   *Dismissal*

Section 583.360 requires the dismissal of an action that is not timely brought to trial as follows:

> "(a) An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within the time prescribed in this article.
>
> "(b) The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute."

### b.   *The strong policy preference in favor of trials on the merits*

The Legislature has expressly provided that "the policy favoring trial . . . of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action. . . ." (§ 583.130.)  "Accordingly, the tolling provisions of . . . section 583.340 must be liberally construed consistent with the policy favoring trial on the merits." (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 693–694 (*Dowling*); see also Cal. Law Revision Com. com., 15C West's Ann. Code Civ. Proc. (2011 ed.) foll. § 583.340, p. 457

33

["The provisions of [section 583.340], subdivision (c) must be interpreted liberally, consistent with the policy favoring trial on the merits"].)

3. *Standards of review*

In *Gaines*, *supra*, 62 Cal.4th 1081, the Supreme Court explained that reviewing courts generally apply the abuse of discretion standard of review in determining whether a period is excludable due to "impossibility, impracticability, or futility" (capitalization & italics omitted) under section 583.340, subdivision (c). (*Gaines*, *supra*, at p. 1100.) However, in applying the abuse of discretion standard, " '[t]he trial court's . . . conclusions of law are reviewed de novo . . . ." (*Ibid.*) That is because "[i]t is an abuse of discretion for a trial court to misinterpret or misapply the law." (*Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1334.)

Reviewing courts have frequently applied the de novo standard of review to claims that the trial court committed legal error in dismissing a case for failure to timely prosecute an action. (See, e.g., *Tamburina*, *supra*, 147 Cal.App.4th at p. 328 [stating that "although generally the determination whether prosecution of an action was impracticable is a matter within the trial court's discretion and subject to the abuse of discretion review standard," appellate court independently reviews "the applicability of section 583.340 [, subdivision] (c) to undisputed facts"]; *Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 324 (*Tanguilig*) [stating that "a trial court's determination of whether section 583.310 was tolled for impossibility, impracticability, or futility," is ordinarily reviewed for an abuse of discretion, but that an appellate court

34

reviews de novo "whether the trial court properly interpreted section 583.310, section 583.340, subdivision (c), or some other question of law"].)

4. *The trial court erred in dismissing the Fistolera Action*

The Fistolera Plaintiffs claim that the trial court erred in dismissing the Fistolera Action for failing to bring the action to trial within five years, as required pursuant to section 583.310.

The Fistolera Plaintiffs note that, pursuant to section 583.340, subdivision (c), the trial court was required to exclude from the five-year period that they had to bring the action to trial under section 583.310, any time during which "[b]ringing the action to trial. . . was impossible, impracticable, or futile." (§ 583.340, subd. (c).) The Fistolera Plaintiffs contend that the trial court erred in failing to exclude 135 days between the date of the assignment of a judge to determine the coordination motion and the date the coordination motion was decided. The Fistolera Plaintiffs maintain that it was impossible or impracticable to bring the Fistolera Action to trial during this period because the law provides that that "no trial may be commenced" in an action that is the subject of a pending petition for coordination. (Cal. Rules of Court, rule 3.515(i).) The Fistolera Plaintiffs argue that the Fistolera Action would not have been subject to dismissal if the trial court had properly excluded these 135 days from the five-year period.

In evaluating the Fistolera Plaintiffs' claim, we must determine whether the trial court abused its discretion in calculating the five-year period under section 583.310 by failing to exclude the 135-day time period during which the petition to coordinate the Kaplan Action and the Fistolera Action was pending. The answer to this question turns

35

primarily on our de novo interpretation of both the relevant provisions of statutory law and the relevant Rules of Court pertaining to coordination petitions. (See *Gordon's Cabinet*, *supra*, 74 Cal.App.4th at p. 38 [stating that "[t]he resolution of the question of tolling while the coordination petition was pending concerns the construction of statutory matter," and that "[a]s to pure questions of law, such as procedural matters or interpretations of rules or statutes, we exercise our independent judgment"].)

a. *Relevant provisions of the California Rules of Court pertaining to petitions for coordination*

California Rules of Court, rule 3.515 (Rule 3.515) outlines the law governing a motion for stay ancillary to a petition for coordination. Rule 3.515(a) provides:

"Motion for stay

"Any party may file a motion for an order under Code of Civil Procedure section 404.5[37] staying the proceedings in any action being considered for, or affecting an action being considered for, coordination, or the court may stay the proceedings on its own motion. The motion for a stay may be included with a petition for coordination or may be served and submitted to the Chair of the Judicial Council and the coordination motion judge by any party at any time prior to the determination of the petition."

Rule 3.515(h) and (j) govern the effect of a stay order and provide in relevant part:

"(h) Effect of stay order

"Unless otherwise specified in the order, a stay order suspends all proceedings in the action to which it applies. A stay order may be

---

37    Section 404.5 provides, "Pending any determination of whether coordination is appropriate, the judge making that determination may stay any action being considered for, or affecting an action being considered for, coordination."

36

limited by its terms to specified proceedings, orders, motions, or other phases of the action to which the order applies.

"[¶] . . . [¶]

"(j) Effect of stay order on dismissal for lack of prosecution

"The time during which any stay of proceedings is in effect under the rules in this chapter must not be included in determining whether the action stayed should be dismissed for lack of prosecution under chapter 1.5 (§ 583.110 et seq.) of title 8 of part 2 of the Code of Civil Procedure."

Even where a stay is not requested, Rule 3.515(i) specifies that no trial may be commenced in an action to which a coordination motion judge has been assigned:

"Effect of absence of stay order

"In the absence of a stay order, a court receiving an order assigning a coordination motion judge may continue to exercise jurisdiction over the included action for purposes of all pretrial and discovery proceedings, *but no trial may be commenced and no judgment may be entered in that action* unless trial of the action had commenced before the assignment of the coordination motion judge." (Italics added.)

> b. *Case law pertaining to the interaction between the Rules of Court governing coordination petitions and the dismissal for delay in prosecution statutes*

In *Bank of America*, *supra*, 200 Cal.App.3d 1000, the Court of Appeal considered several questions related to the ways in which the five-year statutory period for bringing an action to trial may be affected by the Rules of Court governing a petition for coordination. The petitioners in *Bank of America* were defendants in two coordinated actions who sought "a writ of prohibition and/or mandamus directing the Stanislaus County Superior Court sitting as a coordination trial court to vacate its order specially

37

setting the case for trial and to dismiss the action for failure to bring it to trial within five years as required by Code of Civil Procedure section 583.360." (*Id.* at pp. 1005–1006.) As relevant to this appeal, the *Bank of America* court noted that the petitioners "concede[d] that the period while the petition for coordination was pending may be excluded [from the five-year period to bring the action to trial] under [former California Rules of Court,] rule 1514(d)[38] thereby extending the five-year period . . . ." (*Id.* at p. 1011.) The *Bank of America* court added that the petitioners' "concession appears reasonable since during this period 'no trial shall be commenced and no judgment shall be entered . . . .' ([Former Cal. Rules of Court,] [r]ule 1514(d).)" (*Id.* at p. 1012.) The *Bank of America* court explained its endorsement of the petitioners' concession in part as follows:

> "[A]part from [former California Rules of Court,] rule 1514(f),[39] if the trial cannot be commenced, it would be impracticable if not

---

38      Former California Rules of Court, rule 1514(d) is the predecessor to Rule 3.515(i). The *Bank of America* court noted that former California Rules of Court, rule 1514(d) provided, " 'In the absence of a stay order, a court receiving an order assigning a coordination motion judge may continue to exercise jurisdiction over the included action for purposes of all pretrial and discovery proceedings, *but no trial shall be commenced and no judgment shall be entered in that action . . . .*' " (*Bank of America*, *supra*, 200 Cal.App.3d at p. 1012, fn. 5, italics added in original.) As noted in the text, nearly identical language appears in Rule 3.515(i).

39      Former California Rules of Court, rule 1514(f) is the predecessor to Rule 3.515(j). The *Bank of America* court noted that former California Rules of Court, rule 1514(f) provided, "The time during which any stay of proceedings is in effect pursuant to these rules shall not be included in determining whether the action stayed should be dismissed for lack of prosecution pursuant to chapter 1.5 (§ 583.110 et seq.) of title 8 of part 2 of the Code of Civil Procedure." As noted in the text, very similar language appears in Rule 3.515(j).

impossible to '[bring] the action to trial' as provided by section 583.340. Thus, under the statute, the time between the assignment of the coordination motion judge and the determination of the coordination motion is excluded from the five-year period." (*Id.* at p. 1012, fn. 5.)

Ultimately, the *Bank of America* court concluded that the underlying action had not been brought to trial within the five-year period, even after excluding the time between the assignment of the coordination motion judge and the determination of the coordination motion in that case. (*Bank of America*, *supra*, 200 Cal.App.3d at p. 1016.)

In *Gordon's Cabinet*, *supra*, 74 Cal.App.4th 33, the plaintiff claimed on appeal that the trial court had erred in dismissing its action for failing to bring the action to trial within five years. (*Id.* at p. 35.) The plaintiff argued that the five-year period had been tolled while the defendant's petition to coordinate the action with several other actions had been pending. (*Id.* at pp. 35–36, 40.) Specifically, the plaintiff maintained that this period could not be included in the five-year period pursuant to section 583.340, *subdivision (a)*. (See *Gordon's Cabinet*, *supra*, at p. 40 ["Plaintiff points out that the five-year statute provides that it shall be tolled whenever '[t]he jurisdiction of the court to try the action was suspended.' (Code Civ. Proc., § 583.340, subd. (a).)"].) The *Gordon's Cabinet* court rejected this argument because the action had not been stayed while the coordination proceedings were pending, reasoning in part:

> "[Former] California Rules of Court, rule 1514(f) expressly states that, 'The time during which any *stay of proceedings* is *in effect pursuant to these rules* shall not be included in determining whether the action stayed should be dismissed for lack of prosecution . . . .' (Italics added.) Thus, in the rule concerning stay orders for coordination proceedings, express provision is made to toll the five-year statute *when a stay is granted*. By implication, no tolling

39

should be imputed to coordination proceedings unless a stay is
granted. No stay was ever issued in connection with [defendant's]
petition for coordination. [Former California Rules of Court,] [r]ule
1514(d) by its terms applies only 'In the *absence* of a stay order.'
(Italics added.) It would be absurd to hold that the five-year statute
is tolled only when a stay has been granted, but nevertheless to hold
that the statute is also tolled under a provision that applies only in
the absence of a stay order.

"Moreover, we do not believe that [former] California Rules of
Court, rule 1514(d) operated to suspend the *jurisdiction* of the court
to try the case in any fundamental sense. Indeed, [former California
Rules of Court,] rule 1514(d) expressly states that the trial court
'may continue to *exercise jurisdiction* over the included action for
purposes of all pretrial and discovery proceedings.' (Italics added.)"
(*Id.* at pp. 40–41.)

The *Gordon's Cabinet* court also noted that "[p]aintiff cites [*Bank of America*,

*supra*, 200 Cal.App.3d 1000], in support of its argument that [former] California Rules of

Court, rule 1514(d) operates as a suspension of the jurisdiction of the trial court to 'try' an

action." (*Gordon's Cabinet*, *supra*, 74 Cal.App.4th at p. 41.) The *Gordon's Cabinet*

court rejected this contention, asserting that *Bank of America* was "not controlling on this

point." (*Ibid.*)

Finally, the *Gordon's Cabinet* court concluded that the *Bank of America* court's

statements pertaining to former California Rules of Court, rule 1514(d) were dicta:

"[T]o the extent the *Bank of America* court purported to hold that the
provision of [former California Rules of Court,] rule 1514(d),
precluding the commencement of a trial while the coordination
petition was pending acted as a suspension of jurisdiction to try the
case, or made it impossible, impracticable or futile[40] to bring the

---

40     Although the *Gordon's Cabinet* court did not expressly refer to section 583.340,
*subdivision (c)* at any point in its opinion, this quotation implicitly refers to that
subdivision. (See § 583.340, subd. (c) [excluding from the period in which a party is

case to trial, its pronouncements in that regard were dicta. The ultimate result in *Bank of America* was that the Court of Appeal ordered the trial court to vacate its order specially setting the case for trial, and directed the trial court to enter an order dismissing the case for failure to prosecute within five years. [Citation.] Even if the *Bank of America* court considered the five-year statute tolled during the pendency of a coordination petition, under [former California Rules of Court,] rule 1514(d), the action was still untimely. Thus, the *Bank of America* court's construction of [former California Rules of Court,] rule 1514(d) has no precedential value." (*Gordon's Cabinet*, *supra*, 74 Cal.App.4th at p. 41.)

c.  *Application*

i.  *It was impossible for the Fistolera Plaintiffs to bring the Fistolera Action to trial while the Kaplan Plaintiffs' petition for coordination was pending, given that Rule 3.515(i) expressly provides that "no trial may be commenced," while such a petition is pending*

We must first ask whether "[b]ringing the [Fistolera Action] to trial. . . was impossible, impracticable, or futile," (§ 583.340, subd. (c)) during the 135 days immediately following the assignment of the coordination motion judge. The relevant Rule of Court expressly provides that "no trial may be commenced" in an action in which a "court [has] receiv[ed] an order assigning a coordination motion judge." (Rule 3.515(i).) Thus, the text of the relevant law makes it clear that the action could not have been brought to trial during that period.[41]

---

required to bring an action to trial any time during which "[b]ringing the action to trial . . . was *impossible, impracticable, or futile*" (italics added)].)

[41]   " 'Rules of court have the force of law and are as binding as procedural statutes as long as they are not inconsistent with statutory or constitutional law.' " (*In re I.V.* (2017) 11 Cal.App.5th 249, 256.)

Further, in determining the applicability of section 583.340, subdivision (c), we are mindful that "the tolling provisions of . . . section 583.340 must be liberally construed consistent with the policy favoring trial on the merits" (*Dowling*, *supra*, 208 Cal.App.4th at pp. 693–694) and the specific statutory policy preference "favoring trial . . . of an action on the merits" over dismissals for failure to prosecute. (§ 583.130.) In addition, the reasoning of the *Bank of America* court in which the Court of Appeal expressly stated, "[U]nder the statute, the time between the assignment of the coordination motion judge and the determination of the coordination motion is excluded from the five-year period," provides clear support for the conclusion that it would have been impossible to bring the case to trial while the coordination petition was pending. (*Bank of America*, *supra*, 200 Cal.App.3d at p. 1012, fn. 5.)

*Gordon's Cabinet* does not convince us to reach a different result. To begin with, the bulk of the *Gordon's Cabinet* court's analysis pertains to section 583.340, *subdivision (a)* and the question whether a pending coordination motion extends the time to bring an action to trial due to a *suspension of jurisdiction*. (See § 583.340, subd. (a) [excluding from the period in which a party is required to bring an action to trial any time during which "[t]he jurisdiction of the court to try the action was suspended"].) The Fistolera Plaintiffs do not claim that the Kaplan Plaintiffs' coordination motion had the effect of

42

suspending the San Joaquin County Superior Court's jurisdiction in the Fistolera

Action.[42]  Thus, this portion of the *Gordon's Cabinet* is inapposite to this appeal.

However, we have considered the *Gordon's Cabinet* court assertion that we may

infer by way of "implication" that "no tolling should be imputed to coordination

proceedings unless a stay is granted."  (*Gordon's Cabinet*, *supra*, 74 Cal.App.4th at p. 40

[in determining how to apply section 583.340, subdivision (c)].)[43]  The *Gordon's*

*Cabinet* court reasoned that, since former California Rules of Court, rule 1514(f) (current

Rule 3.515(j)) provided that a stay of proceedings tolls the running of the five-year period

for bringing an action to trial, it would not be reasonable to conclude that a petition to

coordinate results in tolling in the *absence* of a stay.  (*Gordon's Cabinet*, *supra*, at p. 40.)

In explaining this reasoning, the *Gordon's Cabinet* court stated, "[I]n the rule concerning

stay orders for coordination proceedings, *express provision is made to toll the five-year*

*statute* when a stay is granted."  (*Ibid.*, citing former California Rules of Court, rule

1514(f) (current Rule 3.515(j)), italics altered.)

Yet, a careful reading of former California Rules of Court, rule 1514(f) (current

Rule 3.515(j)) demonstrates that the rule does *not* contain *any* express reference to the

---

[42]    As the Fistolera Plaintiffs state in their reply brief, "[A]lthough the San Joaquin Superior Court's jurisdiction was not suspended and no stay was imposed while the coordination petition was pending, Rule 3.515(i) made it 'impossible' to bring the action to trial during that period."

[43]    Fidelity makes a similar argument in its brief, contending, "Fistolera Plaintiffs thus impermissibly seek the tolling benefit of a stay without ever having moved for a stay." (Italics omitted.)

five-year statute (§ 583.310). Rather, both the former and the current Rule of Court refer

to the entire collection of statutes pertaining to dismissal for delay in prosecution:

> "The time during which any stay of proceedings is in effect pursuant
> to these rules shall not be included in determining whether the action
> stayed should be dismissed for lack of prosecution *pursuant to
> chapter 1.5 (§ 583.110 et seq.) of title 8 of part 2 of the Code of Civil
> Procedure*." (Former California Rules of Court, rule 1514(f), italics
> added.)[44]

More specifically, Chapter 1.5 (§ 583.110 et seq.) of title 8 of part 2 of the Code of

Civil Procedure contains both *mandatory* dismissal time periods for failing to prosecute

an action (§§ 583.310 [five years after the filing of a complaint], 583.320 [three years

after granting of a new trial]) and *discretionary* dismissal time periods (§ 583.420

[specifying various periods, some as short as two years after various proceedings during

which a court may exercise its discretion to dismiss an action]). Thus, obtaining a stay

ensures that the time during which the stay is in effect will not be included in determining

*either* the mandatory (§§ 583.310, 583.320) *or* discretionary (§ 583.420) dismissal

periods.[45] (See former Cal. Rules of Court, rule 1514(f), Rule 3.515(j).) It is not

reasonable to conclude that the *failure* to obtain a stay results, by necessary implication,

in the absence of a tolling of a *mandatory* dismissal period. In short, the text of the Rule

of Court governing a stay ancillary to a coordination petition (former Cal. Rules of Court,

---

[44]   Current Rule 3.515(j) is not materially distinct.

[45]   Obtaining a stay also ensures that the period during which the stay is in effect will
not be included in determining the time within which a party must serve a summons and
complaint. (§ 583.250.)

rule 1514(f), Rule 3.515(j)) does not, in our view, support the implication that the *Gordon's Cabinet* court ascribes to it.

Drawing such an inference would be contrary to the plain language of Rule 3.515(i) (former Cal. Rules of Court, rule 1514(d)). As discussed above, since under Rule 3.515(i) (former Cal. Rules of Court, rule 1514(d)), "no trial may be commenced" in an action in which a "court [has] receiv[ed] an order assigning a coordination motion judge," the existence of a pending coordination motion clearly makes it "impossible, impracticable, or futile" (§ 583.340, subd. (c)) to bring the case to trial during the pendency of the motion. Thus, that time must be excluded in calculating the mandatory dismissal periods. (§§ 583.310, 583.320.)

Finally, while the *Gordon's Cabinet* court stated that the *Bank of America* court's statement that the existence of a pending coordination petition makes it impossible, impracticable or futile to bring the case to trial, (*Bank of America*, *supra*, 200 Cal.App.3d at p. 1012, fn. 5) is dicta (*Gordon's Cabinet*, *supra*, 74 Cal.App.4th at p. 41), the *Gordon's Cabinet* court did not offer any substantive critique of the *Bank of America* court's reasoning in this regard. In our view, the *Bank of America* court's conclusion is consistent with both the plain language of the relevant law and the statutorily specified underlying policy preferences of the Legislature in this context. For these reasons, we conclude, consistent with *Bank of America*, that bringing the Fistolera Action to trial "was impossible, impracticable, or futile," (§ 583.340, subd. (c)) during the 135 days that the coordination motion was pending.

45

Further, section 583.340, subdivision (c) provides that the time during which it was "impossible, impracticable, or futile," to bring the action to trial "shall be excluded," when "computing the time within which an action must be brought to trial pursuant to this article . . . ."  Thus, the trial court erred in failing to exclude the 135 days during which the coordination period was pending from its calculation of the five-year period.  If the trial court had properly excluded this period, the five-year period for bringing the matter to trial would have ended on February 20, 2018.[46]  Thus, the trial court erred in granting Fidelity's motion to dismiss on December 15, 2017.

ii. *Fidelity's arguments to the contrary are unpersuasive*

Fidelity's alternative arguments in support of affirmance are not persuasive. Fidelity contends that the Fistolera Plaintiffs could not show merely that it was " 'impossible, impracticable, or futile' to bring the cases to trial during the discrete time periods for which [the Fistolera] Plaintiffs seek discretionary tolling."  Rather, Fidelity maintains, the Fistolera Plaintiffs were required to demonstrate that "those discrete periods prevented the cases from going to trial within the . . . five-year . . . mandatory

---

[46]    We calculate the five-year period as follows.  August 30, 2017 was five years after the filing of the August 30, 2012 complaint.  Fidelity acknowledges that the 38 days between the date that the coordination motion judge granted the petition for coordination and the date that the Judicial Council assigned the coordination trial judge are to be excluded from the five-year period.  For the reasons stated in the text, we conclude that an additional 135 days between the date that the coordination motion judge was assigned to the date that the coordination motion judge granted the petition for coordination are to be excluded from the five-year period.  173 days (38 days plus 135 days) after August 30, 2017 is February 19, 2018, which was a court holiday.  Thus, the five-year period ended the following day, February 20, 2018.

period[ ]." (Italics omitted.) This argument is contrary to the language of section 583.340, subdivision (c), which provides that the time during which it was impossible or impracticable to bring the matter to trial is *excluded* from the mandatory period. (See § 583.340 ["In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed . . ."].) Fidelity's argument is also in tension with the Law Revision Commission comments following section 583.340 and with case law, both of which make clear that, " ' "[s]o long as the court may conclude that there was a period of impossibility, impracticability or futility, over which plaintiff had no control . . . , the court is required to toll that period *even if there is ample time after said period of impracticability within which to go to trial*." ' " (*Tanguilig*, *supra*, 22 Cal.App.5th at p. 324, italics added; see also *Gaines*, *supra*, 62 Cal.4th at p. 1101 [quoting Law Review Commission comments].)

Fidelity also argues that we may affirm the trial court's order dismissing the Fistolera Action based on the trial court's statement that the Fistolera Plaintiffs had not "exercised reasonable diligence in preparing for trial." We are not persuaded. To begin with, the question of whether a plaintiff has acted with reasonable diligence is relevant in "establishing a condition of impossibility, impracticability, or futility in the first instance . . . ." (*Gaines*, *supra*, 62 Cal.4th at p. 1101.) For example, in determining whether a court calendaring error should give rise to tolling under section 583.340, subdivision (c), a court should consider that "[t]he exercise of such diligence includes the obligation to monitor the case in the trial court to ascertain whether any filing, scheduling

47

or calendaring errors have occurred."  (*Wilshire Bundy Corp. v. Auerbach* (1991) 228 Cal.App.3d 1280, 1287.)  However, in this case, no amount of diligence on the part of the Fistolera Plaintiffs would have permitted them to bring the action to trial during the time that the coordination petition was pending, since Rule 3.515(i) specifically provides that "no trial may be commenced" during this period.

Further, we question whether a trial court may refuse to apply section 583.340, subdivision (c) where it has "been shown that there was a period during which the bringing of the matter to trial was impossible, impracticable or futile," on the ground that the plaintiff has not acted with reasonable diligence in prosecuting the action, generally. (*Sierra Nevada Memorial-Miners Hospital, Inc. v. Superior Court* (1990) 217 Cal.App.3d 464, 471 [stating that adoption of section 583.340, subdivision (c) "abrogated" case law permitting the dismissal of cases "regardless whether there was a period of impossibility, impracticability, or futility which occurred during the statutory period, if there is a reasonable time within which to bring the matter to trial"].)

However, even assuming that a trial court may refuse to apply section 583.340, subdivision (c) due to a plaintiff's lack of reasonable diligence in preparing for trial that is unrelated to the ground on which the plaintiff seeks tolling,[47] we may not affirm on this

---

[47]    In other words, we assume that it would have been legally permissible for the trial court to have concluded that it was impossible for the Fistolera Plaintiffs to have brought the case to trial during the 135 days when the coordination petition was pending, but nevertheless to refuse to toll the five-year time period for these 135 days on the ground that Fistolera Plaintiffs did not exercise reasonable diligence in preparing for trial.

basis for two reasons. First, it appears that the trial court dismissed the Fistolera Action primarily because the court believed that *Gordon's Cabinet* required rejection of the Fistolera Plaintiffs' argument that the five-year period was tolled while the petition for coordination was pending.[48] We have concluded that the trial court erred in this regard, and it appears unlikely that the court would have dismissed this case, but for this error. This reason, alone, supports reversal.

Second, in any event, *none* of the reasons that the trial court referenced in its order on this issue, whether considered individually or cumulatively, provides an adequate basis for concluding that the Fistolera Plaintiffs failed to exercise reasonable diligence such that the trial court could refuse to toll the five-year period for the 135 days that the coordination petition was pending under section 583.340, subdivision (c).

To begin with, the trial court stated, "Plaintiffs failed to request a stay at *any* time pursuant to California Rules of Court, rule 3.515(a)." Failing to obtain a stay while the coordination motion was pending does not amount to a lack of reasonable diligence in prosecuting the action. On the contrary, by continuing to litigate the action while the coordination motion was pending, the Fistolera Plaintiffs exhibited diligence, attempting

---

[48] As noted in part III.B.1.c, *ante*, the trial court's order states in relevant part, "The court disagrees with the Fistolera [Plaintiffs'] arguments that an additional [135] days must be added due to the coordination proceedings because plaintiffs would not have been able to proceed to trial on this matter. This argument was specifically rejected by . . . [the court in *Gordon's Cabinet*] . . . ."

49

to advance the litigation, even though, pursuant to Rule 3.515(i), "no trial [could] be commenced" while the coordination was pending.

The trial court also stated:

> "Plaintiffs' sixth amended complaint had been stabilized and the ruling denying the motion to consolidate was finalized since April 2, 2016. And yet, currently plaintiffs have a motion to amend to substitute in new plaintiffs set for January 2018 . . . ."

In making these statements, the trial court conflated the Kaplan Action and the Fistolera Action, since a sixth amended complaint had been filed in the *Kaplan* Action, and the motion for leave to amend to substitute a new plaintiff was filed in the *Fistolera* Action. Further, with respect to the motion for leave to amend to substitute a new plaintiff, the trial court did not indicate that the Fistolera Plaintiffs had failed to act diligently in filing their motion upon learning of the Fistolera Plaintiffs' desire to withdraw from the case.

The court also stated:

> "[N]o pleadings have been filed on the class certification motion, and there is no current representative plaintiff."

These statements were factually incorrect, since plaintiffs *had* filed class certification motions in both the Fistolera Action and the Kaplan Action prior to the trial court granting the motion to dismiss.[49] In addition, at the time the court dismissed the

---

49     In the Kaplan Action, the motion was to certify additional claims; a class had already been certified. Although plaintiffs filed class certification motions prior to the court's granting of the motion to dismiss, the hearing on the motions was scheduled for April 2018, a date after the expiration of the five-year period. (See pt. II.H, *ante*.)

50

Fistolera Action, representative plaintiffs of the putative class remained in the Fistolera

Action,[50] since the court had not yet ruled on their motion for leave to amend the

complaint to substitute a new representative plaintiff.

The trial court also stated:

> "Plaintiffs blame the lack of discovery result are due [*sic*] to [Fidelity's] actions.  However, plaintiffs did not pursue motions to compel."

Contrary to the trial court's statement, the record indicates that the Fistolera

Plaintiffs *did* file two motions to compel, and that those motions were granted.

Finally, the trial court stated:

> "Plaintiffs assert they had to wait for the court's ruling on the appeal, but they had the ability to request a stay if they actually believed the issues were intertwined."

This statement refers to the Fistolera Plaintiffs' contention that the Fistolera Action

was tolled during the pendency of the appeal in the Kaplan Action.[51]  However, even

assuming that the Fistolera Action was *not* tolled during the pendency of the Kaplan

---

[50]     Indeed, they remain in this case as parties on appeal.

[51]     Specifically, the Fistolera Plaintiffs argued at the hearing on the motion to dismiss that the five-year period for bringing the Fistolera Action to trial was extended 592 days to account for the period during which the Kaplan Action was pending on appeal.  The Fistolera Plaintiffs contended that the appeal in the Kaplan Action made it "impracticable to bring [the Fistolera Action] to trial."
The Fistolera Plaintiffs raise this contention as an alternative argument on appeal. In light of our conclusion that the court erred in dismissing the Fistolera Action for the reasons stated in the text, we need not consider this argument.

appeal, the Fistolera Plaintiffs still obtained a trial date prior to the expiration of the five-year period, when properly calculated as indicated above.

Accordingly, we conclude that we may not affirm the trial court's order on the ground that the Fistolera Plaintiffs did not "exercise[ ] reasonable diligence in preparing for trial."

Finally, Fidelity argues that "[e]ven if the motion to add a new plaintiff had been granted,[52] the new named plaintiff plainly could not have taken the putative *Fistolera* class action from amended complaint to trial in the 21 days leading up to the February 16, 2018 trial . . . (See *Massey v. Bank of America* (1976) 56 Cal.App.3d 29, 33 [(*Massey*)] [affirming dismissal of putative class-action[53] 34 days prior to five-year deadline [because] 'it is undisputed that the 34 days remaining of that [statutory] period was grossly inadequate for the giving of [class] notice . . . and to allow even a reasonable period for exercise by the class members of their options'].)"[54] While we have carefully

---

52    To be precise, the motion at issue was styled as a motion for leave to amend the second amended complaint to dismiss Aliabadi, Fistolera, and Palacios as named plaintiffs and to add Richard Eidson as a named plaintiff.

53    While Fidelity's parenthetical suggests that the *Massey* court dismissed the entire action, in fact, as discussed in the text, the *Massey* court dismissed only the "class aspect of the action" (*Massey*, *supra*, 56 Cal.App.3d at p. 33) pursuant to the mandatory dismissal statutes.

54    (See also *Warner Bros. Entertainment Inc. v. Superior Court* (2018) 29 Cal.App.5th 243, 263 [citing *Massey* for the proposition that "a class action must be dismissed under the five-year statute if the class issues are not decided with enough time for notice to the class and a minimally reasonable period for class members to exercise their options before trial begins"].)

considered whether we may apply *Massey* to affirm the trial court's order dismissing the Fistolera Action and the subsequent judgment, we conclude that we may not do so in this case, for the following reasons.

First, we have serious questions about whether *Massey* correctly concluded that a court may dismiss the "class *aspect* of the action," (*Massey*, *supra*, 56 Cal.App.3d at p. 33, italics added) pursuant to the mandatory dismissal statutory scheme (§§ 583.310, 583.360).[55]  While *Massey* was decided under former section 583, subdivision (b), that statute, like current section 583.310, provides that an "*action*" shall be brought to trial within five years.  (Italics added.)  In addition, former section 583, subdivision (b) and current section 583.360 provide for the dismissal of an "*action*" for failure to timely prosecute.  (See § 583.360, subd. (a) ["An *action* shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the *action* is not brought to trial within the time prescribed in this article" (italics added)].)

The meaning of the term "action" in the context of the mandatory dismissal statutes was explained in *Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298: "An action is not limited to the complaint but refers to the entire judicial proceeding . . . and is generally considered synonymous with 'suit.'  [Citation.]  Action is not the same as cause of action. . . . [¶] The Courts have generally used the word 'action' to refer to the

---

55     The *Massey* court affirmed a separate order "grant[ing] . . . summary judgment on plaintiff's *individual* cause of action," for reasons entirely unrelated to the five-year failure to prosecute statute.  (See *Massey*, *supra*, 56 Cal.App.3d at pp. 33–34, italics added.)

proceeding or suit and not to the cause of action." (Accord, *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 597 ["the term 'action' is not interchangeable with 'cause of action' "].)

Nothing in the text of the mandatory dismissal statutes supports the conclusion that courts may dismiss individual causes of action or "aspect[s]" (*Massey*, *supra*, 56 Cal.App.3d at p. 33) of causes of action. *Massey* does not provide any analysis of this issue and we are reluctant to conclude that a court may dismiss the "class aspect of the action," (*ibid.*) given the statutory text.[56]

However, even assuming that a court may dismiss the "class aspect" of an action pursuant to sections 583.310, 583.360, *Massey* does not support affirmance in this case, for two reasons. First, as noted in part II.B, *ante*, the operative second amended complaint contains an *individual* (nonclass) breach of contract cause of action as well as several causes of action brought on behalf of both the individual named plaintiffs and the class. Fidelity has not demonstrated that the individual breach of contract cause of action and the individual aspects of the other causes of action could not have been tried before

---

[56]    We acknowledge that in *Brumley v. FDCC California, Inc.* (2007) 156 Cal.App.4th 312 (*Brumley*), the Court of Appeal concluded that the dismissal statutes may be applied to individual causes of action rather than to an entire action under certain limited circumstances. (*Id.* at pp. 322, 325 [concluding that causes of action alleged in an amended complaint that did not relate back to original claims were not subject to dismissal upon the running of the five-year period for the original claims notwithstanding that "the plain language of section 583.310 . . . refers to dismissal of an entire 'action,' rather than separate causes of action within an action"].)

the expiration of the five-year period in February 2018, and *Massey* is inapposite to this question.

In addition, even with respect to the class claims, it is undisputed that in light of the trial court's dismissal of the case in December 2017, the court did not rule on the Fistolera plaintiffs' motion for leave to amend to dismiss Aliabadi, Fistolera, and Palacios as named plaintiffs and to add Eidson as a named plaintiff, which was scheduled for a hearing in January 2018. If the trial court had granted this motion, then any subsequent dismissal for failure to prosecute upon the expiration of the five-year period in February 2018 would have be entered against Eidson rather than against Aliabadi, Fistolera, and Palacios. Accordingly, we may not affirm the judgment against Aliabadi, Fistolera, and Palacios[57] under Fidelity's theory that the trial court would have entered an identical dismissal order in February 2018, since Aliabadi, Fistolera, and Palacios may well not have been in the case at that point.

Accordingly, we conclude that we must reverse the dismissal of the Fistolera Action.

### 5. *The trial court properly dismissed the Kaplan Action*

The Kaplan Plaintiffs claim that the trial court erred in dismissing the Kaplan Action due to their failure to bring the action to trial within three years of the issuance of the remittitur in the prior appeal (§ 583.320, subd. (a)(3)).

---

[57]   The record indicates that the judgment against Aliabadi, Fistolera, and Palacios includes an award of $30,624.65 in costs in favor of Fidelity.

The trial court determined that the three-year period for the Kaplan Plaintiffs to bring the action to trial on remand (§ 583.320, subd. (a)(3)) ended on May 30, 2017.[58] The Kaplan Plaintiffs contend that the trial court erred in failing to determine that the three-year period (§ 583.320, subd. (a)(3)) had been extended for several additional periods of time. First, the Kaplan Plaintiffs argue that the time to bring the Kaplan Action to trial was extended from May 28, 2017 for an additional 135 days for the period after the assignment of the coordination motion judge and prior to the granting of the coordination motion. Thus, the Kaplan Plaintiffs contend that the three-year deadline was extended to at least October 10, 2017.[59] For the reasons stated in part III.B.4 in connection with the Fistolera Action, *ante*, we agree.

However, since the trial court dismissed the Kaplan Action on December 15, 2017, in order for the Kaplan Plaintiffs to be entitled to reversal, they must establish that they are entitled to additional tolling that would have extended the tolling deadline

---

[58] Three-years after the April 15, 2014 remittitur was April 15, 2017. As explained in part III.B.1.c, *ante*, the trial court determined that the Kaplan Plaintiffs were entitled to 45 days of tolling or until May 30, 2017. The 45-day tolling period consisted of 6 days for a peremptory challenge and 39 days for the period after the coordination motion judge granted the coordination petition until the assignment of a coordination judge. On appeal, the Kaplan Plaintiffs acknowledge that the proper tolling periods for these events are 5 days for the peremptory challenge and 38 days for the assignment of the coordination trial judge. These two periods extended the time to bring the Kaplan Action to trial for 43 days, or from April until May 28, 2017.

[59] 135 days after May 28, 2017 is October 9, 2017, which was a holiday. Thus, according to the Kaplan Plaintiffs, "the three-year deadline was extended until October 10, 2017."

beyond October 10, 2017.  The Kaplan Plaintiffs offer several arguments in support of their claim for "further tolling."  First, the Kaplan Plaintiffs contend that they are entitled to tolling to February 16, 2018 because the trial court's budgetary constraints made it impracticable to bring the action to trial earlier.  The Kaplan Plaintiffs also argue that they are entitled to tolling because they acted diligently at all times, and that Fidelity frustrated and delayed the litigation and engaged in a misuse of the discovery process.  In addition, the Kaplan Plaintiffs contend that several "new causes of action," that were added to the action after *Kaplan I*, are subject to the *five*-year period set forth in section 583.310 because these causes of action purportedly "do not relate back to the original complaint."  Finally, the Kaplan Plaintiffs maintain that Fidelity did not demonstrate that it would suffer any prejudice if the action were allowed to proceed, and contend that if this court were to affirm the dismissal, we would be "put[ting] form over substance," since another class member "would be entitled to re-file an identical class action . . . ."  We consider these arguments below, and conclude that none of them has merit.  Accordingly, we affirm the trial court's dismissal of the Kaplan Action because the Kaplan Plaintiffs did not bring their action to trial by October 10, 2017.

      a. *The trial court did not abuse its discretion in implicitly determining that the Kaplan Plaintiffs were not entitled to tolling of the three-year period based on the trial court's budgetary constraints*

The Kaplan Plaintiffs' primary argument for additional tolling beyond October 10, 2017 is that the "trial court's budgetary constraints made it impracticable to bring the action to trial."  (Boldface & capitalization omitted.)

57

In considering this argument, we begin with the well-established principle that " '[t]ime consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar are not within the contemplation of these exceptions [to the mandatory period to bring an action to trial].' " (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 731 (*Bruns*).) Thus, we must consider whether the Kaplan Plaintiffs have established that they are entitled to reversal because the reasons for the delay that they encountered in bringing the matter to trial were something other than the " 'ordinary incidents of proceedings.' " (*Ibid.*) In their brief, the Kaplan Plaintiffs' make two distinct arguments in support of their contention that they are entitled to tolling because the court's budgetary constraints made it impracticable for them to bring the matter to trial.

First, the Kaplan Plaintiffs argue that they are entitled to tolling for the period *after* their August 15, 2017 request for a trial date. Specifically, they argue in relevant part:

> "Notably, Plaintiffs' request on August 15, 2017 came *before* the respective five- and three-year periods to bring the actions to trial had expired. That the trial court could not set the actions for trial until February 16, 2018 due to budget concerns is ample grounds for the Court to find impracticability and to extend the applicable period to bring the actions to trial." (Boldface & second italics omitted.)

We conclude that the trial court did not abuse it discretion in implicitly determining that the Kaplan Plaintiffs were not entitled to tolling during this period. To begin with, case law establishes that " ' "[w]here a plaintiff possesses the means to bring a

matter to trial before the expiration of the [mandatory dismissal] period by filing a motion to specially set the matter for trial, *plaintiff's failure to bring such motion will preclude a later claim of impossibility or impracticability*." [Citations.]' " (*Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1273–1274 (*Sanchez*), italics added [concluding that plaintiffs' acquiescence to trial court's selection of trial date and failure to bring a motion to advance the date pursuant to former California Rule of Court, rule 375 (current Cal. Rule of Court, rule 3.1335)[60] precluded claim of impracticability]; see, e.g., *Jordan*, *supra*, 182 Cal.App.4th at p. 1422 [rejecting claim that time to bring matter to trial was tolled due to courtroom unavailability because plaintiffs failed to request "that the matter be tried before . . . impending expiration of the [mandatory dismissal] period," and plaintiffs "did not file a motion for a priority trial setting"]; *De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 374 [rejecting argument that time to bring matter to trial was tolled based on court congestion and stating "[appellant] also had a duty to take whatever other measures were available to attempt to accelerate trial of the

---

[60]    California Rules of Court, rule 3.1335 provides:

"(a) Noticed motion or application required

"A party seeking to advance, specially set, or reset a case for trial must make this request by noticed motion or ex parte application under the rules in chapter 4 of this division.

"(b) Grounds for motion or application

"The request may be granted only upon an affirmative showing by the moving party of good cause based on a declaration served and filed with the motion or application."

case before expiration of the [mandatory dismissal] period, including bringing a motion to advance the trial . . . . pursuant to California Rules of Court, rule 3.1335"]; *Wale v. Rodriguez* (1988) 206 Cal.App.3d 129, 133 ["[a]ppellant was not entitled to assume that a motion to specially set would have been futile," and stating that "failure to so move was fatal"].)

As noted in part III.B.1.b, *ante*, Fidelity moved to dismiss the Kaplan Action on August 11, 2017, and three days later, the Kaplan Plaintiffs filed an ex parte application to set the case for trial and to consolidate it with the Fistolera Action. However, despite Fidelity's motion to dismiss, in their ex parte application, the Kaplan Plaintiffs expressed little urgency about setting the matter for trial, stating only, "Plaintiffs request that the Court set both cases for trial. Plaintiffs will be prepared to discuss scheduling issues and a convenient trial date based on the Court's calendar with the Court at the *ex parte* hearing." At the hearing, the trial court stated that it would set the matter for trial on February 16, 2018, which is a date well beyond the three-year period. The Kaplan Plaintiffs did not object to that date or request an earlier trial date. Nor did the Kaplan Plaintiffs file a motion to advance the trial after the August 15 hearing. Under these circumstances, we conclude that the mere fact that the Kaplan Plaintiffs *requested* a trial date at a time before the three-year period expired does not establish that it was impracticable for them to bring the matter to trial within the three-year period within the meaning of section 583.340, subdivision (c). (See, e.g., *Sanchez*, *supra*, 109 Cal.App.4th at pp. 1273–1274 [" ' "plaintiff's failure to [file a motion to advance the trial date] will preclude a later claim of impossibility or impracticability" ' "].)

In addition to contending that they were entitled to tolling for the period *after* their August 14, 2017 ex parte application to set the cases for trial, the Kaplan Plaintiffs argue that they were entitled to tolling for unspecified periods of time *prior* to this date. Specifically, the Kaplan Plaintiffs contend that it "was impracticable, if not impossible, for Plaintiffs to bring the Kaplan [A]ction to trial due to Fidelity's conduct in consistently delaying the action and the trial court's refusal to rule on the motion for consolidation or to set the trial date until after the pleadings had been set." (Italics omitted.) This contention fails for two reasons. First, the trial court could reasonably have determined that the " 'delay[s]' " to which the Kaplan Plaintiffs refer were delays caused by the " 'ordinary incidents' " of litigation. (*Bruns*, *supra*, 51 Cal.4th at p. 731.) This is particularly true since, on remand, the trial court *sustained* two of Fidelity's three demurrers with leave to amend, and the trial court *denied* all of the Kaplan Plaintiffs' requests for consolidation on remand.[61] The trial court could have reasonably determined that *meritorious* filings cannot be considered to be improper litigation delay tactics that served to toll the time within which to bring the matter to trial. In fact, to conclude otherwise would constitute an abuse of discretion.

Second, the trial court's refusal to rule on the Kaplan Plaintiffs' requests to consolidate the actions and to set a trial date until the pleadings were set does not constitute evidence that *budgetary constraints* made it impracticable to bring the matter

---

[61] Fidelity opposed the consolidation requests.

to trial.  Rather, such rulings, when considered in light of the trial court's sustaining of Fidelity's demurrers, constitute evidence that the Kaplan Plaintiffs' *pleading deficiencies* delayed resolution of the case.  The trial court did not abuse its discretion in determining that the Kaplan Plaintiffs were not entitled to tolling for the time it took them to sufficiently establish the operative complaint in the case.

Accordingly, we conclude that the trial court did not abuse its discretion in implicitly determining that the Kaplan Plaintiffs were not entitled to tolling of the three-year period until February 16, 2018 based on their contention that the trial court's budgetary constraints made it impracticable to bring the action to trial earlier.

> b.  *The trial court did not abuse its discretion in implicitly determining that the Kaplan Plaintiffs were not entitled to tolling of the three-year period due to their diligence in prosecuting the action and Fidelity's purported attempts to delay the case*

The Kaplan Plaintiffs contend that they "acted diligently at all times." (Boldface & capitalization omitted.)  However, we concluded in part III.B.1, *ante*, that the trial court did not abuse its discretion in implicitly determining that the Kaplan Plaintiffs had *not* acted diligently in failing to request that the case be specially set for trial before the expiration of the three-year period.  In any event, even assuming that the Kaplan Plaintiffs *had* acted diligently throughout the litigation, "[a] plaintiff's reasonable diligence alone does not preclude involuntary dismissal; it is simply one factor for assessing the existing exceptions of impossibility, impracticability, or futility." (*Bruns*, *supra*, 51 Cal.4th at p. 731.)

62

Further, while the Kaplan Plaintiffs assert that Fidelity "attempted to frustrate and delay" their efforts to "coordinate and consolidate the two actions and bring them jointly to trial," the record supports the trial court's implicit determination that Fidelity's filings did not *unreasonably* delay the Kaplan Plaintiffs' efforts to litigate the case. In addition, although the Kaplan Plaintiffs argue that Fidelity's "strategy of delay paid off when, on the eve of trial, all three named Plaintiffs in the Fistolera [A]ction were required to withdraw," (italics omitted) the Kaplan Plaintiffs fail to establish that any of the withdrawal requests were attributable to Fidelity's litigation practices.[62] Even more fundamentally, the fact that the named plaintiffs in the *Fistolera* Action no longer wished to remain in the case does not demonstrate that the *Kaplan* Action was timely prosecuted, even assuming that the withdrawals might have had some impact on the progress of the Kaplan Action.

The Kaplan Plaintiffs also argue that they were entitled to tolling of the three-year period for some unspecified period due to Fidelity's "[r]epeated [m]isuse," (boldface omitted) of the discovery process.[63] In support of this contention, the Kaplan Plaintiffs

---

[62] The Kaplan Plaintiffs acknowledge in their brief that the reasons given for the withdrawal requests appear to be largely personal in nature (Aliabadi became "busy," Fistolera had health problems, and Palacios "was no longer interested in serving as a class representative").

[63] The Kaplan Plaintiffs do not articulate a specific number of days that they contend the three-year period should have been tolled due to Fidelity's discovery abuses. Instead, they argue that the abuses are "sufficient to find that it was impracticable for the Kaplan Plaintiffs to bring the action to trial by October 10, 2017." (Italics omitted.)

note that discovery in the two actions was coordinated and that the trial court granted two motions to compel filed by the Fistolera Plaintiffs.

"Generally, delays encountered in discovery are part of the 'normal delays involved in prosecuting lawsuits' and do not excuse failure to bring a case to trial . . . ." (*Bank of America*, *supra*, 200 Cal.App.3d at p. 1016; see also *Martinez v. Landry's Restaurants, Inc.* (2018) 26 Cal.App.5th 783, 796 [concluding that trial court did not abuse its discretion in rejecting argument that it was "impracticable for [plaintiffs] to move for class certification and bring their action to trial for the nine months between September 28, 2015, when the court granted in part their motion to compel, and the end of June 2016 when production of the electronically stored information was completed"]; *Gentry v. Nielsen* (1981) 123 Cal.App.3d 27, 35 [rejecting plaintiffs' "claim that failure to bring the case to trial within the statutory period was impracticable as a result of [defendant's] failure to appear at numerous times scheduled for the taking of his deposition" because plaintiffs "made no showing that the delays . . . created a futility in proceeding to trial within the five-year period"].)  The Kaplan Plaintiffs have not demonstrated that the trial court abused its broad discretion in this context in implicitly concluding that the time to bring the Kaplan Action to trial was not tolled due to Fidelity's discovery practices.

> c. *The Kaplan Plaintiffs have not established that any of their causes of action are subject to the five-year statute, and not the three-year statute*

The Kaplan plaintiffs contend that the five-year statute (§ 583.310) within which an action must be brought to trial applies to several causes of action brought for the first

64

time in their corrected fourth amended complaint, rather than the three-year statute that (§ 583.320, subd. (a)(3)) the trial court applied, which applies after a new trial has been ordered.[64]  Citing *Barrington v. A. H. Robins Co.* (1985) 39 Cal.3d 146, 149 and *Brumley*, *supra*, 156 Cal.App.4th 312, the Kaplan Plaintiffs argue that they "could have asserted th[e]se [new] claims in a new action," and maintain that had "they . . . done that, these claims would have been subject to the five-year period set forth in [s]ection 583.310, [and] not the three-year period set forth in [section] 583.320."  (Italics omitted.) We are not persuaded.

"It has . . . been held that the filing of an amended complaint does not prolong the time within which the action may be brought to trial," rather than being subject to dismissal.  (*Anderson v. San Diego* (1953) 118 Cal.App.2d 726, 731.)  In *Brumley*, the Court of Appeal recognized an exception to this rule when the new claims do *not* relate back to the original claims.  (*Brumley*, *supra*, 156 Cal.App.4th at p. 325.)  In that circumstance, the *new* causes of action need not be prosecuted within the time to bring the *original* causes of action to trial.  (*Ibid.*)

---

[64]     The Kaplan Plaintiffs did not raise this claim in the trial court in opposing Fidelity's motion to dismiss, but instead, affirmatively argued that the three-year statute applied to all of its claims.  In their reply brief in this court, the Kaplan Plaintiffs contend that we may consider their claim even though they did not raise it in the trial court because the claim presents "a legal question premised on undisputed facts."  We assume for purposes of this decision that we may consider this claim notwithstanding any potential forfeiture or preclusion based on principles of estoppel.

In this case, the Kaplan Plaintiffs *assert* that the "newly-added claims do not relate back to the original complaint."  However, the Kaplan Plaintiffs fail to discuss the law governing relation back or to apply this law to the complaints at issue.[65]  Under these circumstances, we conclude that the Kaplan Plaintiffs clearly have not demonstrated that the causes of action alleged for the first time in the corrected fourth amended complaint do not relate back to the original complaint.  (See e.g., *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 ["To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"].)  Accordingly, we further conclude that the Kaplan Plaintiffs have not established that any of their causes of action are subject to the five-year statute (§ 583.310).

> d.   *The Kaplan Plaintiffs' arguments pertaining to the lack of prejudice*
>      *to Fidelity and the possibility of another class member filing a new*
>      *action do not support reversal*

The Kaplan Plaintiffs argue that "[t]here has not been any showing of prejudice to Fidelity" if the Kaplan Action were to proceed.  However, the Kaplan Plaintiffs cite no cases, and we are aware of none, that support the notion a defendant must make a showing of prejudice to obtain a mandatory dismissal for failure to timely prosecute an

---

[65]    The *Brumley* court explained that "[a] new cause of action in an amended complaint *is* held to relate back to the earlier pleaded claims if the later cause of action '(1) rest[s] on the same general set of facts, (2) involve[s] the same injury, and (3) refer[s] to the same instrumentality, as the original one.' "  (*Brumley*, *supra*, 156 Cal.App.4th at p. 323, italics altered.)  The Kaplan Plaintiffs offer no analysis as to how these factors apply in this case.

action. No such requirement exists in the text of the statute, which expressly prohibits the creation of exceptions thereto. (See also § 583.360, subd. (b) ["The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute"].) Indeed, even as to *discretionary* dismissal, "[a] defendant is not required to support a motion to dismiss under the statute with an affirmative showing of prejudice. Prejudice from unreasonable delay is presumed." (*Knight v. Pacific Gas & Electric Co.* (1960) 178 Cal.App.2d 923, 929–930.) It would seem to necessarily follow that the same would hold true for *mandatory* dismissal.

Finally, the Kaplan Plaintiffs argue that this court should not affirm the dismissal of the Kaplan Action because "[i]f the dismissals are affirmed on appeal, any absent class member would be entitled to re-file an identical class action against Fidelity by taking advantage of the tolling of the statute of limitations during the pendency of the class action." We reject this argument because the prospect of the filing of a hypothetical action in the future has no relevance in determining whether the present action was timely prosecuted.[66]

Accordingly, we conclude that the trial court properly dismissed the Kaplan Action.

---

[66] We express no opinion with respect to the effect, if any, the present litigation might have on the application of the statute of limitations on a hypothetical future "identical class action."

## IV.

## DISPOSITION

The March 7, 2018 judgment in the Fistolera Action is reversed.  The April 2, 2018 judgment in the Kaplan Action is affirmed.  Each party is to bear its own costs on appeal.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.